**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

|  |  |
|---|---|
| TEXAS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS and AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,<br><br>　　　*Plaintiffs*,<br><br>　　v.<br><br>BRANDON CREIGHTON in his official capacity as Chancellor of the Texas Tech University System, ARCILIA ACOSTA, CODY CAMPBELL, CLAY CASH, TIM CULP, SHELLEY SWEATT, DOUG McREAKEN, DON SINCLAIR, DUSTIN WOMBLE, and RACHEL McLELLAND, in their official capacities as members of the Texas Tech University System Board of Regents,<br><br>　　　*Defendants*. | Case No. 3:26-cv-01845-LS |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OPPOSED MOTION FOR
PRELIMINARY INJUNCTION**

The Creighton Memoranda, issued by Chancellor Creighton and enforced by the Texas Tech Board of Regents ("Board of Regents"), facially prohibit teaching censored viewpoints disfavored by the political leadership of the Texas Tech system—even if applied and enforced haphazardly. They constitute blatant and confusing viewpoint discrimination that the First and Fourteenth Amendments do not tolerate.

Contrary to Defendants' opposition, Plaintiffs have established a likelihood of success on the merits of their First Amendment viewpoint discrimination and Fourteenth Amendment vagueness claims.[1] Indeed, Plaintiffs' members already have been censored by the Creighton Memoranda, have proffered evidence of confusing and inconsistent written censorship mandates, and have had to attest to their compliance with additional censorship for the rapidly approaching fall 2026 academic semester. Plaintiffs have also demonstrated that they have suffered, and will continue to suffer, irreparable harm from the Creighton Memoranda and that the balance of equities and the public interest weigh in their favor. Moreover, Plaintiffs' claims are ripe for adjudication and are not barred by the government speech doctrine or sovereign immunity.

Plaintiffs' members readily satisfy all preliminary injunction factors and, therefore, respectfully request that the Court grant their Motion for Preliminary Injunction to halt

---

[1] Defendants identified their opposition as only an "initial response" and purportedly "reserve[d] the right to file a later and more fulsome response at an appropriate time on leave of court." *See* ECF No. 31 at 1. This request should be rejected, especially when Defendants failed to provide a more "fulsome" opposition solely due to an emergency of their own creation. ECF No. 30 at 1-3. Under the local rules, Defendants are not permitted to submit additional opposition briefing without leave of court. W.D. Tex. Civ. R. 7(e)(1). Sur-replies are disfavored, even with leave from the court. *See Cantu v. Guerra*, No. SA-20-CV-0746-JKP, 2023 WL 5217852, at *7 (W.D. Tex. Aug. 11, 2023). Defendants did not ask in advance to file an "initial" response—instead, they asked *while filing that response*. This Court should deny any motion for leave to file an additional opposition or sur-reply given the time sensitive nature of Plaintiffs' Motion for Preliminary Injunction. *Kirby v. Hartford Fire Ins. Co.*, No. 24-CV-00309, 2025 WL 3904149, at *2 (W.D. La. Dec. 2, 2025) (denying a request for supplemental briefing as it would delay the resolution of the proceedings); ECF No. 32.

enforcement of the Creighton Memoranda and prevent further irreparable harm.

## I. PLAINTIFFS HAVE DEMONSTRATED THAT A PRELIMINARY INJUNCTION IS WARRANTED.

### A. Plaintiffs' First Amendment Viewpoint Discrimination Claim is Likely to Succeed.

The Supreme Court has consistently acknowledged "that, given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003). Although the state may have discretion regarding the general subjects and academic focus taught at a public university, its regulation of the content of its courses must comply with the First Amendment, which does not support a prophylactic ban on professors' espousing, teaching, or even referencing views with which political leaders disagree. *See Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 277 (N.D. Fla. 2022), *aff'd, Pernell v. Fla. Bd. of Governors of State Univ.*, No. 22-13992, 2026 WL 1955783 (11th Cir. July 7, 2026). Yet a prophylactic viewpoint ban is exactly what occurred here. For example, the Board of Regents told Plaintiffs' Member A that their course materials "violate the system's Prohibition on Prejudiced Advocacy." ECF No. 19-2 ¶ 13. In particular, the Board of Regents prohibited Member A from teaching Ta-Nehisi Coates' award-winning memoir *Between the World and Me* because the book allegedly "promot[es] the belief that meritocracy is a construct of oppression designed to exploit Black bodies." ECF No. 19-2 ¶ 13. The Board of Regents told Member C that they could not use songs with LGBTQIA topics in their French language course and required the removal of literature involving queer communities from their 20th Century Literature course. ECF No. 19-9 ¶¶ 12,14. And Member D, who is the only full-time faculty in the Women and Gender Studies Department, will lose their employment after the university shuts down that department

due to its viewpoints. ECF No. 19-13 ¶ 31. Given the proffered evidence of unconstitutional viewpoint discrimination, Plaintiffs have a substantial likelihood of success on the merits for their claim.

### B.  Plaintiffs' Fourteenth Amendment Vagueness Claim is Likely to Succeed.

Defendants argue that the Creighton Memoranda are not unconstitutionally vague because "it is clear what the ordinance[s] as a whole prohibit[]" and they are not vague "in the vast majority of [their] intended applications." ECF No. 31 at 8-9. Defendants further assert that since Plaintiffs' members are engaged in conduct "that is clearly proscribed," Plaintiffs are "barred from pursing a void-for-vagueness challenge." *Id.* at 9. However, Defendants' arguments are only applicable when "no constitutionally protected conduct" is implicated. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 494-95 (1982). Here, because the Creighton Memoranda implicate "'expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.'" *Am. Sustainable Bus. Council v. Hegar*, 818 F. Supp. 3d 866, 874 (W.D. Tex. 2026) (citing *Smith v. Goguen*, 415 U.S. 566, 573 (1974)).

A policy can be impermissibly vague either because it: (1) "fails to give ordinary people fair notice of the conduct it punishes," or (2) is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). On the first test, Plaintiffs' members make clear that professors—clearly "ordinary people"—have no "fair notice" of what the Creighton Memoranda actually ban. *Id.* The Creighton Memoranda, for example, instruct that faculty "must not include or advocate" material that "promote[s]" or "inculcate[s]" the belief that, *inter alia*, "[m]eritocracy or a strong work ethic are racist, sexist, or constructs of oppression." ECF No. 19-3 at 1. The Board of Regents cited this provision to ban Member A from teaching Ta-Nehisi Coates' *Between the World and Me*. ECF No. 19-6 at 3. This confused Member A, a

professor in the English department, because "no faculty member in [their] department has ever taught such content," nor does the banned book promote or inculcate such beliefs about meritocracy. ECF No. 19-2 ¶¶ 10, 21. In other words, the content that the Board of Regents barred Member A from teaching was not "clearly proscribed" by the Creighton Memoranda, yet it was nonetheless banned. *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743,756-57 (5th Cir. 2026).

The same is true for Member B, who was banned from treating transgender patients—for *any* medical condition—in the presence of a medical student. ECF No. 19-7 ¶ 5. Nothing in the Creighton Memoranda appears to prohibit this; in fact, the Memoranda *explicitly exempts* "course material centering on or including SOGI themes [] strictly required for . . . patient/client care." ECF No. 19-4 at 3. The fact that an explicit exemption was not enough to shield Member B's course material from censorship plainly establishes the vagueness of Defendants' arbitrary Memoranda. Member C, too, had songs removed from their French language course that focused on LGBTQIA relationships or that had a transgender singer even though that song did not mention sexuality or gender identity. ECF No. 19-8 ¶ 12. Member C does not understand why the Creighton Memoranda's prohibition on topics related to "[human] sexual orientation" only applies to *some* orientations and not, for example, material implicating heterosexuality. *Id.* ¶ 13. Again, such an inexplicable outcome demonstrates vagueness.

Alternatively, on the second test for vagueness, the Creighton Memoranda "authorize[] arbitrary or discriminatory enforcement" by the Board of Regents. *Woodlands Pride v. Paxton,* 168 F.4th 293, 308 (5th Cir. 2026) (citation omitted). Member B was told not to treat transgender patients in front of medical students despite what seems like an exception. ECF No. 19-7 ¶ 5. Member C only censored songs featured LGBTQIA content or transgender singers, not songs by straight, cisgender singers who also spoke of concepts around heterosexuality and sexual

orientation. ECF No. 19-8 ¶ 13. And Member C was told not to teach about gay victims in the Holocaust, despite an exemption for material that is "[h]istorical[ly] [i]ntrinsic." *Id.* ¶ 18; ECF No. 19-3 at 5. These examples demonstrate "arbitrary" or "discriminatory" enforcement of the Creighton Memoranda, satisfying the second test for vagueness. *Woodlands Pride,* 168 F.4th at 308.

### C.  The Government Speech Doctrine Does Not Bar Plaintiffs' Claims.

Without citing a single relevant case in a university setting, Defendants argue that Plaintiffs' First Amendment claims are barred by the government speech doctrine, as articulated in *Garcetti v. Ceballos,* 547 U.S. 410, 426 (2006). *See* ECF No. 31 at 5-6. In *Garcetti*, however, the Court declined to "decide whether the [traditional government speech] analysis . . . would apply in the same manner to a case involving speech related to scholarship or teaching." *Garcetti*, 547 U.S. at 425. And the Supreme Court has directed courts to "exercise great caution before extending our government-speech precedents" because those precedents are "susceptible to dangerous misuse." *Matal v. Tam*, 582 U.S. 218, 235 (2017). Indeed, in direct conflict with Defendants' claim that there is "no principled basis to conclude that" *Garcetti*'s holding should not apply in universities, ECF No. 31 at 6-7, every single federal court of appeals considering this question has held that *Garcetti* does not apply to academic speech by public university professors.[2] While the Fifth Circuit has not explicitly ruled on *Garcetti*'s applicability to academic speech, it has applied the *Pickering* balancing test to professors' First Amendment claims in cases decided after *Garcetti*. *See, e.g.*, *Buchanan v. Alexander,* 919 F.3d 847, 853–54 (5th Cir. 2019); *Lowery v. Mills*, 157 F.4th

---

[2] *See, e.g., Heim v. Daniel*, 81 F.4th 212, 226 (2d Cir. 2023); *Porter v. Bd. of Trustees of N.C. State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023); *Meriwether v. Hartop*, 992 F.3d 492, 504-05 (6th Cir. 2021); *Kilborn v. Amiridis*, 131 F.4th 550, 558 (7th Cir. 2025); *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014); *Pernell*, 2026 WL 1955783, at *8.

729, 744 (5th Cir. 2025), *cert. denied*, No. 25-927, 2026 WL 1855135 (U.S. June 29, 2026); ECF No. 19 at 13-14. Accordingly, the government speech doctrine does not apply to, and does not bar, Plaintiffs' First Amendment claims.

### D.  Plaintiffs' Members Have Suffered Irreparable Harm.

The Creighton Memoranda violate constitutional rights of Plaintiffs' members under the First and Fourteenth Amendments, which constitutes an irreparable injury in and of itself. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). The Creighton Memoranda will continue to violate the First and Fourteenth Amendment rights of Plaintiffs' members into the fall 2026 semester and beyond if not enjoined. Complaint, ECF No. 1s ("Compl.") ¶ 18.

### E.  The Balance of Equities and the Public Interest Unquestionably Favor Plaintiffs.

Defendants make the unbounded argument that, because Senate Bill 37 was enacted by the legislature and "reflects the will of the people of Texas," the law must be in the public interest. But such a conclusion would run against the very purpose of the Constitution: a law that tramples constitutional rights cannot be in the public interest. And, in fact, as the Fifth Circuit has explained, "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Moreover, the state's proffered interest of ensuring that taxpayer funds and student tuition go toward course instruction that "prepares students for future employment and citizenship," ECF No. 31 at 9-10, can never outweigh the First Amendment.

II.    **DEFENDANTS' OPPOSITION DOES NOT PRESENT ANY REAL CHALLENGES TO PLAINTIFFS' CLAIMS.**

### A.  Plaintiffs Have Standing.

Contrary to Defendants' assertions, *see* ECF No. 31 at 6, "self-censorship" is not the only injury claimed by Plaintiffs. Such assertions ignore both First Amendment jurisprudence and that Defendants issued written censorship orders that trampled on Plaintiffs' right to free speech. In the First Amendment context, "a plaintiff has suffered an injury in fact if he (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably . . . proscribed by [the policy in question], and (3) the threat of future enforcement of the [challenged policies] is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020) (citation modified). Plaintiffs have satisfied all three elements of a First Amendment injury-in-fact and, thus, established standing for their claims: (1) their members attempted to include, in their coursework, certain information and/or perspectives about race, gender identity, and sexual orientation; (2) Chancellor Creighton and the Board of Regents issued written censorship decisions preventing them from using that coursework because of the perspectives contained therein; and (3) Defendants clearly intend to continue implementing and enforcing the Creighton Memoranda, as evidenced from their opposition brief. ECF. Nos. 19-6, 19-12, 19-17; ECF No. 31. Indeed, Defendants tacitly admit there have been concrete injuries when they concede that the Creighton Memoranda "ultimately resulted in a modest number of changes to TTUS courses and their content in the spring semester of 2026." ECF No. 31 at 7. Even setting aside this concession, "self-censorship" itself is a sufficient injury-in-fact. ECF No. 19-13 ¶ 16; *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006). Because academic censorship is a cognizable First Amendment injury, *see Lowery v. Mills*, 157 F.4th 729, 739 (5th Cir. 2025), Defendants are wrong to suggest that termination is required for a professor

to establish standing for a First Amendment violation. *Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007).[3] Thus, Plaintiffs have established standing to bring their First Amendment claims.

### B. Plaintiffs' Claims are Ripe.

Defendants' contention that Plaintiffs' claims are not ripe for adjudication is belied by the factual record. The Fifth Circuit has held that "a court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). The First Amendment harms here are neither. On the contrary, the harms could not be more concrete: Plaintiffs' members received written mandates from the Chancellor and Board of Regents (*i.e.*, the Creighton Memoranda and subsequent enforcement notices) that explicitly document the First Amendment violations. ECF Nos. 19-6, 19-12, 19-17. Defendants point to no authority—nor could they—to support the remarkable contention that the mere fact that the Creighton Memoranda are an enforced policy, as opposed to enforced legislation, negates ripeness. Such a distinction is meaningless with respect to ripeness and the constitutional analysis before the Court. Thus, Plaintiffs' claims are ripe for adjudication.

---

[3] Defendants' unexplained citation to *Glass v. Paxton* is puzzling. *See* ECF No. 31 at 6. *Glass* concerned a fear of self-censorship extending from a university policy that permitted students to carry guns on campus. The Fifth Circuit held that plaintiff's fear of classroom gun violence, which caused her to self-censor, was not "certainly impending," because it was "not a certainty that a license-holder will illegally brandish a firearm in a classroom." 900 F.3d 233, 241 (5th Cir. 2018). In contrast, here, Defendants' policy explicitly prevents certain speech, and Plaintiffs have alleged multiple instances of censorship that are not only "certainly impending," but have already happened.

### C.  Sovereign Immunity Does Not Bar Plaintiffs' Claims.

Defendants argue that the Board of Regents enjoys sovereign immunity from Plaintiffs' claims.[4] They further argue that Plaintiffs have not shown that the Board members have demonstrated a willingness to exercise a particularized duty to enforce the Creighton Memoranda or violate the First Amendment through their personal conduct. *See* ECF No. 31 at 5. These contentions are belied by controlling precedent and the factual record. *See Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023); ECF No. 19-6 at 3. *Ex parte Young* provides an exception to the sovereign immunity normally provided by the Eleventh Amendment. 209 U.S. 123, 159–60 (1908). Accordingly, lawsuits may proceed in federal court when a plaintiff requests prospective injunctive relief against state officials in their official capacities for ongoing federal violations. *Id.*; *compare to Moore v. La. Bd. Of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). "For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Plaintiffs have proffered sufficient evidence to establish that the actions of the Board of Regents fall under the *Ex Parte Young* exception.

First, members of the Board of Regents have the "power and authority to govern, control, and direct the policies of the TTU System," and "[e]ach Board member's duties entail establishing policy direction for and … goals consistent with the role and mission of each institution under its management and control." Compl. ¶ 29. According to the Creighton Memoranda, each course review process culminates with a review by the "Chair & Vice Chair of the Academic, Clinical

---

[4] Defendants do not contest that Plaintiffs can properly bring claims against Chancellor Creighton. *See* ECF No. 31 at 4-5.

and Student Affairs Committee," Compl. ¶¶ 76-78, which "consists of *all nine board members* (plus the student regent) and oversees the educational mission and academic programs; TTUHSC and TTUHSCC El Paso clinical programs (both patient care services and clinical investigation); preparation and implementation of strategic plans; and student and faculty affairs within the component institutions of the TTU System."[5] Indeed, the majority of Plaintiffs' declarants have received detailed censorship decisions mandating the removal of course material on disfavored viewpoints *from* the Board of Regents. ECF Nos. 19-6, 19-12, 19-17. Second, the remedy sought is prospective as Plaintiffs' members face ongoing and future harms, including censorship of course materials and loss of employment for the fall 2026 semester due to the Board of Regents' enforcement of the Creighton Memoranda. Compl. ¶ 18; ECF No. 19-13 ¶ 31. Because the Board of Regents are the primary enforcers and implementers of the Creighton Memoranda, the *Ex Parte Young* exception permits Plaintiffs to sue them in their official capacities.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction.

*[signatures on following page]*

---

[5]  STANDING COMMITTEES, https://www.texastech.edu/board-of-regents/committees.php (emphasis added) (last visited Aug. 4, 2026).

DATED this 7th day of August 2026.

Respectfully submitted,

*/s/ Antonio L. Ingram II*

Antonio L. Ingram II
Avatara A. Smith-Carrington (*admitted pro hac vice*)
Maydrian Strozier-Lowe (*admitted pro hac vice*)
Alyssa K. Gordon (*admitted pro hac vice*)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, D.C. 20005
aingram@naacpldf.org
acarrington@naacpldf.org
mstrozier-lowe@naacpldf.org
agordon@naacpldf.org
(202) 682-1300
FAX: (202) 682-1312

Christina Das (*admitted pro hac vice*)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, N.Y. 10006
cdas@naacpldf.org
(212) 965-2200
FAX: (212) 226-7592

Nicholas Hite (*admitted pro hac vice*)
Elizabeth Dankers
(*admitted pro hac vice*)
Nephetari Smith
(*admitted pro hac vice*)
Kenneth D. Upton, Jr. (SBN 00797972)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
nhite@lambdalegal.org
ldankers@lambdalegal.org
kupton@lambdalegal.org
Phone: (214) 219-8585
FAX: (855) 535-2236

Katherine M. Bolger (*admitted pro hac vice*)
Rachel A. Strom (*admitted pro hac vice*)
Leena Charlton (*admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Fl.
New York, New York 10020
katebolger@dwt.com
rachelstrom@dwt.com
leenacharlton@dwt.com
Tel.: (212) 489-8230
Fax: (212) 489-8340

- 11 -