**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS and the TEXAS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS,

*Plaintiffs,*

v.

BRANDON CREIGHTON in his official capacity as Chancellor of the Texas Tech University System, ARCILIA ACOSTA, CODY CAMPBELL, CLAY CASH, TIM CULP, SHELLEY SWEATT, DOUG MCREAKEN, DON SINCLAIR, DUSTIN WOMBLE, and RACHEL MCLELLAND, in their official capacities as members of the Texas Tech University System Board of Regents,

*Defendants.*

Case No. 3:26-cv-01845-LS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION TO TRANSFER**

Plaintiffs respectfully submit this Opposition to Defendants' Motion to Dismiss for Improper Venue, under Rule 12(b)(3) of the Federal Rules of Civil Procedure (hereinafter, "Rule 12(b)(3)"), and Defendants' Motion to Transfer, under 28 U.S.C. § 1404(a).

## I. INTRODUCTION

This is a case challenging unlawful censorship resulting from the Creighton Memoranda, a systemwide university policy in the Texas Tech University System that broadly censors certain discussions of race, gender, and sexual orientation in classrooms, clinics, and research settings. The Creighton Memoranda's application spans across "20 academic locations in 16 different cities" in Texas, half of which are spread widely across the Western District of Texas: Odessa, Midland, Waco, Fredericksburg, Marble Falls (Highland Lakes), San Angelo, Junction, and El Paso.[1] Many potential witnesses, including at least one Defendant, are dispersed across West Texas.[2]

Plaintiffs properly initiated this action in the Western District of Texas, El Paso Division (hereinafter "the Western District") because substantial harms stemming from Defendants' actions occurred and will continue to occur in the Western District. Specifically, the harms of Defendants' viewpoint censorship are particularly deleterious at Texas Tech University Health Sciences Center El Paso ("TTUHSC El Paso"), given its mission to serve Hispanic patients on the U.S.-Mexico border and the significant number of Black Americans in the region. *See* ECF No. 1 ¶¶ 139–51; 173–75; *See also* Exhibit A, Declaration of Carl B. Dwyer Jr. ("Dwyer Decl.") ¶¶ 10–19. Even

---

[1] *Campuses & Academic Sites*, Tex. Tech Univ. Sys., https://www.texastech.edu/campuses.php (last visited July 17, 2026).

[2] Defendants' Motion to Dismiss or Transfer is fundamentally undermined by serious misrepresentations in their assertions. Defendants make inaccurate representations to the Court, in a sworn declaration, that no Defendant resides in the Western District and that no TTUHSC Lubbock campuses are within the Western District. ECF No. 35-1, ¶ 8, 10. Tim Culp resides in Midland, Texas and the Texas Tech University Health Sciences Center Lubbock's satellite campuses are in Midland and Odessa. Both of these cities are in the Western District of Texas.

TTUHSC in Lubbock has satellite campuses in Midland and Odessa, which are in the Western District. Defendants curiously emphasize the percentage of student enrollment in the Northern District of Texas, Lubbock Division (hereinafter "the Northern District"), as compared to the Western District. However, venue is proper in a location where Plaintiffs have alleged substantial harm, not the location where the highest numbers of non-parties who may be theoretically impacted by a given policy reside. Based on the allegations in the complaint and the El Paso NAACP declaration accompanying this motion, Plaintiffs have met their burden and established that venue in the Western District is proper because Plaintiffs' members in El Paso have experienced and will continue to experience substantial harm from Defendants' censorship.

In addition, Defendants have failed to meet their burden for transfer to the Northern District under both the private interest and public interest factors. In terms of the private interest factors, Defendants have not met their burden in demonstrating that the Northern District is a clearly more convenient venue than the Western District based on location of evidence, non-party witnesses, witness cost of attendance, or any other practical problem arising at trial. Similarly, Defendants fail to meet their burden to justify transfer under the public interest factors, failing to demonstrate that the Northern District is a clearly more convenient venue when examining court congestion, localized interests, familiarity with the forum, or conflict of laws. Indeed, not only do the Defendants not meet their burden, many of these factors also weigh against transfer based on the Plaintiffs' allegations and evidence.

For the reasons set forth below, this Court should deny Defendants' motion to dismiss and their motion to transfer.

## II. LEGAL STANDARD

A motion to dismiss for improper venue is governed by Rule 12(b)(3). Once defendants challenge venue, the burden of sustaining venue lies with plaintiffs. *See Langton v. Cbeyond*

*Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003). On a Rule 12(b)(3) motion to dismiss for improper venue, the court is "require[d] [] to view all the facts in a light most favorable to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (citation modified). Further, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Id.* (citation modified). If there is no evidentiary hearing, plaintiffs may carry their burden by presenting facts that, taken as true, would establish venue. *See Langton*, 282 F. Supp. 2d at 508.

Conversely, the burden of proof to transfer a case to a different venue under 28 U.S.C. § 1404(a) lies with Defendants, who "must show good cause." *In re Chamber of Commerce of United States*, 105 F.4th 297, 303–04 (5th Cir. 2024) (citation modified). Proving such cause "is the movant's burden—and the movant's alone." *Id.* This burden is greater than merely showing that another venue is "more likely than not to be more convenient" or "that litigating would be more convenient for the defendant elsewhere." *Id.* Instead, "a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it *plainly obvious*—i.e., *clearly* demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* (emphasis added). In other words, Defendants must demonstrate that the alternative venue is "clearly more convenient" than the current one. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (directing the district court to transfer the case from a division—which had no connection to the parties, the witnesses, or the facts of this case—to another division, which had extensive connections to the parties, the witnesses, and the facts of the case).

Defendants bear such a heavy burden because "[w]hen a defendant is haled into court, some inconvenience is expected and acceptable." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th

Cir. 2022). Plaintiffs, having submitted the complaint, must be given some weight in their choice of forum. *Mosaid Techs. Inc. v. Infineon Techs. AG*, No. 1:25-CV-00358, 2026 WL 917481, at *2 (W.D. Tex. Mar. 24, 2026) (citing *Chamber of Com.*, 105 F.4th at 302.). "[If] the transferee venue is not clearly more convenient than the venue chosen by the [Plaintiffs], [their] choice should be respected." *Children's Health Def. v. WP Co.*, No. 2:23-CV-004, 2023 WL 3940446, at *1 (N.D. Tex. May 12, 2023) (quoting *Volkswagen II*, 545 F.3d at 315).

This Court's analysis of Defendants' transfer request should proceed in two steps: "First, the district court must ask whether the case 'might have been brought' in the destination venue," and "[s]econd, the district court must weigh the private and public interest factors." *Chamber of Com.*, 105 F.4th at 304 (citation omitted).

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id*.

In applying these factors, the Fifth Circuit emphasizes that "[n]o factor is of dispositive weight" and has "cautioned against a raw counting of the factors that weighs each the same." *In re Media Matters for Am.*, 143 F.4th 631, 638 (5th Cir. 2025) (citation modified). Furthermore, "[if] there is no demonstration by [Defendants], let alone a clear one, the court cannot weigh a factor against the [Plaintiffs] and in favor of transfer." Order Denying Motion to Transfer at 4, *ParkerVision, Inc. v. Tex. Instruments Inc.*, 2024 WL 4901932, at *30 (W.D. Tex. Oct. 21, 2024), *report and recommendation adopted by*, 2024 WL 4895744 (W.D. Tex. Nov. 26, 2024), Dkt. No.

61 (quoting *Def. Distributed*, 30 F.4th at 434).

## III. ARGUMENT

### A. Venue in the Western District is Proper.

In the Fifth Circuit, under 28 U. S. C. § 1391(b)(2), "the chosen venue does not have to be the place where the most relevant events took place," but only a place where a "substantial" part of the events or omissions giving rise to the claims occurred based on Plaintiffs' evidence and allegations.[3] *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018) (finding the Western District of Texas was a proper venue despite not being the single district with the greatest concentration of events); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) ("Section 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." (citation omitted)). Courts have recognized that, based on the allegations in the complaint, "venue may be properly laid in more than one district," and the "substantial part of the events or omissions test . . . does not require that the chosen venue be the best venue . . . [T]he selected district must simply have a *substantial* connection to the claim." *VP, LLC v. Newmar Corp.*, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012) (emphasis added) (citation modified). Despite Defendants' reliance on student headcounts and union membership rates, "[s]ubstantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum," based on the allegations in the complaint. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (citation modified).

[3] Defendants' arguments that Plaintiffs cannot allege venue under 28 U. S. C. § 1391(b)(1) and 28 U. S. C. § 1391(b)(3), ECF. No. 35 at 4-6, are inapposite. Plaintiffs only allege venue under 28 U. S. C. § 1391(b)(2). Compl., ECF No. 1 ¶ 20.

Plaintiffs, through their complaint and the El Paso NAACP declaration, have established proper venue in the Western District under 28 U.S.C. § 1391(b)(2). The Creighton Memoranda were issued to the Presidents of all five of Texas Tech's component institutions, including TTUHSC El Paso. *See* ECF No. 1 ¶¶ 71, 82. TTUHSC El Paso collectively educates over 1,200 students and serves countless members of the El Paso community. *Id.* ¶¶ 139–43. The Creighton Memoranda mandated that TTUHSC El Paso depart from its traditional curricular review process and censor certain content related to race, gender identity, and sexual orientation from curricular offerings. *Id.* ¶¶ 146–51, 83–94. Plaintiffs' Member #8 alleges, in detail, that they received instructions to remove content about training future medical professionals to effectively care for racial and sexual minorities. *Id.* ¶¶ 173–75. Moreover, El Paso NAACP members attend and work at TTUHSC El Paso. Dwyer Decl. ¶ 19. Plaintiffs have submitted evidence of non-party witnesses who can speak to the unique enforcement of the Creighton Memoranda on medical training and education. *Id* at ¶¶ 16, 19.

These allegations and evidence, taken as true, form a close nexus between the primary events giving rise to the claim and the venue where this suit is located, therefore establishing substantial events. *See Tactacell, LLC v. Deer Mgmt. Sys., LLC*, 620 F. Supp. 3d 524, 530 (W.D. La. 2022) ("When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial . . . .)." Confusingly, Defendants argue that venue is only proper in the Northern District since Plaintiffs bring a facial challenge and the Creighton Memoranda were "created, approved, and issued" in Lubbock, where the flagship university sits. ECF. No. 35 at 4. To the contrary, these facts fail to render the Western District an improper venue, as "[c]ourts have recognized that venue may be properly laid in more than one district, and the substantial part of the events or omissions test does not require that the chosen

venue be the *best* venue . . . [T]he selected district must simply have a substantial connection to the claim." *Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 722 (citation modified). Indeed, federal district courts routinely find venue proper in a judicial district even when, like here, defendants promogulated the law or policy in another judicial district.[4] In the higher education context, universities routinely defend litigation outside of their flagship campus's judicial district when the effects of a systemwide policy arise at component institutions.[5] Plaintiffs have met their burden of demonstrating venue is proper in the Western District under 28 U.S.C. § 1391(b)(2).

**B. Defendants Fail to Meet Their Burden to Transfer.**

The Western District is a convenient venue for Plaintiffs' facial challenge to the Creighton Memoranda. "[W]hen the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315 (emphasis added). Plaintiffs do not dispute that this case '"might have been brought"' in the Northern District. *See Chamber of Com*, 105 F.4th at 304 (citation omitted). But that fact alone is

[4] *See, e.g.*, *Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, No. CV-F-04-6663, 2005 WL 2709508, at *6 (E.D. Cal. Oct. 20, 2005) ("In cases involving state officials, a substantial connection to the claim occurs not only where the 'triggering event' takes place, but also where the effects of the decision are felt.") (citing *McClure v. Manchin*, 301 F. Supp. 2d 564, 569 (N.D. W. Va. 2003)) (rejecting secretary of state's claim that a state election law challenge must be brought in the district where the state government sits); *Emison v. Catalano*, 951 F. Supp. 714, 721 (E.D. Pa. 1996) (suits challenging official acts may be brought in the district where the effects of the challenged statute are brought despite being enacted elsewhere)). *See also Bay Cnty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 806 (E.D. Mich. 2004) (finding that because the effects of the challenged election ballot procedure were felt statewide, venue was appropriate outside the district where state government was seated).

[5] *See, e.g.*, *Spectrum WT v. Wendler*, 816 F. Supp. 3d 648, 648 (N.D. Tex. 2026) (flagship in S.D. Tex., litigated in N.D. Tex.); *Students for Just. in Palestine, at Univ. of Houston v. Abbott*, 756 F. Supp. 3d 410, 410 (W.D. Tex. 2024) (UH flagship in S.D. Tex., litigated in W.D. Tex.); *Students Against Racial Discrimination v. Regents of Univ. of Cal.*, 812 F. Supp. 3d 1046, 1046 (C.D. Cal. 2025) (flagship in N.D. Cal., litigated in C.D. Cal.); *Klaassen v. Trs. of Ind. Univ.*, 549 F. Supp. 3d 836, 836 (N.D. Ind. 2021) (flagship in S.D. Ind., litigated in N.D. Ind.); *Am.'s Frontline Doctors v. Wilcox*, No. EDCV211243, 2021 WL 4546923, at *1 (C.D. Cal. July 30, 2021) (flagship in N.D. Cal., litigated in C.D. Cal.).

not sufficient to transfer this case. Defendants patently fail to meet their burden to "clearly demonstrate" good cause in seeking transfer to the Northern District under any of the private or public interest factors, given the impact of the Creighton Memoranda on the residents of El Paso. Defendants' principal argument in support of transfer to the Northern District is the residence of 98% of their students there, but that fact does not touch upon the relevant private or public factors. As the Fifth Circuit makes clear, "a § 1404(a) venue transfer is for the convenience of parties and witnesses," and here, students are not parties. *Volkswagen II*, 545 F.3d at 315. While some students may be key witnesses, those key witnesses will primarily be students in El Paso. This is because the evidence of censorship impacting students in the Northern District is captured through written guidance. ECF. Nos. 19-6, 19-12, 19-17. Conversely, the unique clinical nature of medical training and education means that many of the impacts of the Creighton Memoranda in El Paso are not written down and student witness testimony will be more important to substantiate Plaintiffs' allegations at trial. ECF. No. 1 ¶¶ 173–75; *see generally*, ECF No. 19-7; Dwyer Decl. ¶ 19. As explained below, Defendants have not met their burden to establish good cause for transfer as they have failed to allege the Northern District is *clearly* more convenient than the current one, when evaluating the necessary public and private interest factors.

#### ***i. No Private Factor Weighs in Favor of Transfer.***

##### **(a) <u>Sources of Proof Are Not More Easily Accessible in the Northern District.</u>**

"The first factor focuses on the location of documents and physical evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citation modified). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Mere allegations that some sources are likely to exist in the Northern District are insufficient. *See Lacey v. United States*, No. EP-23-CV-466, 2024 WL 1550443, at *3 (W.D. Tex.

Mar. 20, 2024). Moreover, when most evidence is electronic, this factor is not significant. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (finding "the vast majority of the evidence is electronic, and therefore equally accessible in either forum.").

The Creighton Memoranda are two documents that can be—and were—transmitted electronically to university presidents in the Texas Tech system, including TTUHSC El Paso. Any evidence related to harms stemming from enforcement of the Creighton Memoranda is also likely in electronic form. Moreover, any defendants or witnesses residing in the Northern District will likely only need to travel to El Paso for evidentiary hearings or significant court appearances. The parties can make accommodations for depositions. This factor, therefore, fails to weigh in favor of transfer.

**(b) Defendants Fail to Proffer Uncooperative Witnesses Outside The Court's Subpoena Power.**

When assessing whether a witness may be unwilling to testify at trial, '"[u]nder this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order."' *Jawbone Innovations, LLC v. Meta Platforms, Inc.*, No. W-23-CV-00158, 2024 U.S. Dist. LEXIS 239223, at *18 (W.D. Tex. Aug. 7, 2024) (citation omitted). This factor is only relevant where "non-party witnesses . . . are outside the [] District's subpoena power," and "a proper venue . . . enjoy[s] absolute subpoena power for both depositions and trial." *TikTok*, 85 F.4th at 360 (citation omitted). Notably, "[t]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 630–31). For this factor to hold significant weight, "[a]t an absolute minimum," Defendants must provide "a brief summary of [the witnesses'] likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify . . . ." in the Western District. *Rusesabagina v. GainJet Aviation S.A.*, 2023 WL 4853402, at *6 (W.D. Tex.

July 28, 2023) (citation modified). Without that information, "it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial." *Id.*

Notably, Defendants fail to produce any evidence to meet this burden. At the same time, Plaintiffs have proffered a sworn declaration of the El Paso NAACP, which describes Plaintiffs' members who are a part of the TTUHSC El Paso academic community and who have probative evidence of the Creighton Memoranda's impact in El Paso. Dwyer Decl. ¶¶ 16, 19.

In any case, Defendants are unlikely to meet their burden even if they did provide evidence relating to specific non-party witnesses because all witnesses relevant to the case, non-party or otherwise, are Texas residents or employed in Texas. This fact is fatal to Defendants' arguments. Under Federal Rule of Civil Procedure Rule 45(c)(1)(B)(ii), a court can compel testimony "within the state where the person resides, is employed, or regularly transacts business in person," so long as such persons "would not incur substantial expense." What qualifies as a "substantial expense," while not explicitly defined, is perceived by courts in the Fifth Circuit as certainly greater than the almost 4-hour flight or 5-hour drive from Lubbock to El Paso, which any subpoenaed witness in Lubbock would have to travel. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456, 2018 WL 4620636, at *5 (E.D. Tx. May 22, 2018) (finding the movant party "fails to establish that any of the identified non-party witnesses would incur 'substantial expense' if compelled by the roughly six-hour round-trip drive").

Thus, Defendants have failed to meet their burden with respect to this factor, and instead Plaintiffs' evidence causes this factor to weigh against transfer.

**(c) <u>Issue of Witness Costs and Inconvenience Fails to Support Transfer.</u>**

"When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct

relationship to the additional distance to be traveled." *TikTok*, 85 F.4th at 361 (citation modified). Nevertheless, this factor does not weigh in favor of transfer for four reasons.

*First*, and most significantly, Defendants have not identified any specific, non-party witnesses necessary for this factor to hold weight. As a requirement for this factor to weigh, this Court has held that "the moving party must identify specific witnesses and outline the substance of their testimony." *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773, 2010 WL 1170976, at *3 (W.D. Tex. Mar. 23, 2010), *report and recommendation approved by*, 2010 WL 11914495 (W.D. Tex. Apr. 14, 2010); *see also Lacey*, 2024 WL 1550443, at *4 (holding the factor neutral because defendants failed to identify specific witnesses who would be inconvenienced and were necessary for trial). "[A] flat assertion that there are some witnesses . . . who possess information germane to the facts at issue" is insufficient. *Id.* (citation modified).

*Second*, "'it is the convenience of *non-party witnesses*, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis.'" *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 690 (W.D. Tex. 2013) (emphasis added) (quoting *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012)). This is because "[t]he court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 407 (S.D. Tex. 2016) (citation omitted); *see also Reuter v. Jax, Ltd., Inc.*, 251 F.R.D. 231, 235 (E.D. Tex. 2007) ("The court should not transfer venue where the result will be merely to shift the expense and inconvenience from one party to the other.") (citation omitted). Further, where key witnesses are "employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992); *see also, e.g.*, *ADS Sec. L.P.*, 2010

WL 1170976, at *4 ("If the Defendant is referring to employee witnesses, *then their convenience would be entitled to little weight.*" (emphasis added)). Here, Plaintiffs are suing the Defendant Chancellor and Board of Regents in their official capacities and, therefore, Defendants are both party witnesses and university-employed witnesses. Thus, their convenience is entitled to only limited weight under this factor as Defendants simply seek to shift expenses from their party to Plaintiffs' members, which is impermissible.

*Third*, evaluating cost of attendance is even less clear when, as is the case here, "relevant witnesses reside across the state." *Planned Parenthood*, 52 F.4th at 631. Thus, a transfer to the Northern District of Texas will not manifest a clear gain in convenience. Of the named Defendants, only three of nine—Creighton, Cash, and Womble—reside within 100 miles of Lubbock.[6] Because most of Defendants' *own party* would have to travel, regardless of whether the venue was in El Paso or Lubbock, there is no clear gain in convenience from transferring the case to the Northern District, even when accounting for the little weight some named Defendants hold as party witnesses. Moreover, Defendants already regularly travel throughout the state of Texas as part of their professional responsibilities, so any inconvenience from a flight to El Paso is minimal.[7] *See*

---

[6] Tex. Tech Univ. Sys., *supra* n.4.

[7] *See, e.g.*, @TTUSystem, X (Nov 3, 2025, 8:04PM), https://x.com/TTUSystem/status/1985437962826293484 ("Last week, . . . Chancellor-elect Brandon Creighton kicked off the beginning of a systemwide tour of our multiple campuses with visits to Amarillo, El Paso and Wichita Falls. . . . Upcoming stops include Angelo State University in San Angelo, as well as Texas Tech University and additional Texas Tech University Health Sciences Center campuses across the state."); Odessa American, *Texas Tech University System Regents to meet in Odessa*, www.oaoa.com/local-news/education/texas-tech-university-system-regents-to-meet-in-odessa/ (discussing Board of Regents convening in Odessa and describing Board meetings that took place in Amarillo and Abilene); Texas Tech University System, *Meeting Calendar & Preparation Guidelines*, https://www.texastech.edu/board-of-regents/calendar-meetings.php (indicating Board convening in Dallas); Texas Tech University System, *Board of Regents Agenda Book*, https://www.texastech.edu/board-of-regents/february-2024/agenda-book-feb-2024-3.pdf (indicating Board convening in Wichita Falls).

*Contl. Airlines*, 805 F. Supp. at 1401 (citing *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 735 (S.D.N.Y. 1989)) ("It is difficult to accept defendant's claim that this district is inconvenient, since the Connecticut to New York City commute is not overly burdensome and defendant has had no apparent difficulty traveling into this district to transact business."). Likewise, other potential employee witnesses are scattered across Texas Tech's multiple campuses from Midland to San Angelo to El Paso. Shifting the venue to the Northern District, therefore, will not clearly manifest a significant convenience gain for those witnesses either.

*Fourth*, live trial testimony by Defendants' witnesses in the Northern District may prove to be unnecessary since many of Plaintiffs' members received written communications and other documents from them about course modifications, which speak for themselves. ECF. Nos. 19-6, 19-12, 19-17. *See* Order Denying Motion to Transfer at 6, *Texas v. Trump*, No. 2:21-cv-00067-Z (N.D. Tex. June 6, 2021), Dkt. No. 47 (holding this factor neutral because "it is conceivable this case can be decided on motions, on a paper record"). Yet, given the clinical nature of medical education, censorship at TTUHSC El Paso does not have the same degree of documentary proof and likely will require live testimony from both party and non-party witnesses. ECF No. 1 ¶¶ 173–75; Dwyer Decl. ¶¶ 16, 19.

When evaluating the weight of various costs and inconveniences to witnesses, "courts should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 1845154, at *6 (E.D. Tex. May 7, 2021) (citation modified). Rather, courts "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.* Given the importance of witnesses testifying about the censorship in El Paso from the Creighton Memoranda, this factor is not only unsatisfied by Defendants' failure to meet their burden but also

weighs against transfer.

**(d) <u>No Other Practical Problems Weighs in Favor of Transfer.</u>**

The final private interest factor to consider is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). Defendants fail to proffer any other practical problems that would render a trial in the Western District difficult, inexpedient, or expensive. This factor, therefore, weighs against transfer, resulting in no private interest factor weighing in favor of transfer.

***ii. Transfer Would Not Serve Any Public Interest Factor.***

The public interest factors also weigh against transferring this case to the Northern District.[8] Defendants have fallen far short of meeting their substantial burden to show the Northern District is *clearly* more convenient than the Western District.

**(a) <u>No Administrative Difficulties Result from Venue in the Western District.</u>**

The first public interest factor "concerns whether there is an appreciable difference in docket congestion between the two forums." *S.M.R Innovations LTD v. Apple Inc.*, 756 F. Supp. 3d 453, 465 (W.D. Tex. 2024) (citation modified). "That factor asks not whether transfer will reduce a court's congestion, but whether a trial may be speedier in another court because of its less crowded docket." *Donegan v. Toro Co.*, No. EP-22-CV-00332, 2023 WL 3831793, at *11 (W.D. Tex. June 5, 2023) (citation modified). "When evaluating this factor, courts often look to the median interval time between filing a case to disposition in considering this factor." *Qualls v.*

[8] When there are "little to no actual physical records or evidence necessary for resolution" or such evidence is unclear "at this stage of the litigation," courts hold private interest factors neutral and turn to the public interest factors. *See Chamber of Com. of United States v. Consumer Fin. Prot. Bureau*, 735 F. Supp. 3d 731, 738 (N.D. Tex. 2024), *vacated by*, No. 4:24-CV-00213, 2024 WL 5052377 (N.D. Tex. July 16, 2024).

*Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 825 (S.D. Tex. 2022). When it is unclear whether a case is more likely to proceed faster in another district, this factor is held neutral. *See Donegan*, 2023 WL 3831793, at *12. As the Fifth Circuit has clarified, '"[i]t is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion.' This is because court congestion 'is speculative and ignores the plaintiffs' role as master of the complaint.'" *Chamber of Com.*, 105 F.4th at 311 (citation omitted).

Assessing Defendants' argument on its face, there is insufficient evidence to support their contention that resolution would take significantly longer in the Western District compared to the Northern District. Defendants allege that the Western District experiences greater court congestion than the Northern District. However, the numbers tell a different story when placed in context. In 2025, the Western District's time from filing to disposition for civil cases was 7.5 months, a mere two months greater than the Northern District's 5.8 months, and on par with the Southern and Eastern Districts of Texas.[9] A less than 2-month difference is hardly significant evidence of an appreciable difference in docket congestion. *See, e.g., Qualls*, 594 F. Supp. 3d at 825 (finding this factor neutral where the difference in disposition times between districts was only 1.9 months). Moreover, when assessing the number of civil cases that remain on a given court's docket for greater than three years, the Western District of Texas has *fewer* of these cases than the Northern District of Texas.[10]

Most importantly, court statistics are aggregated across the entire district, which includes Waco's patent-heavy docket along with several other divisions and tells little about the comparison

---

[9] Admin. Off. of the U.S. Cts., *Federal Court Management Statistics: Comparison of Districts Within Circuits* (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison1231.2025.pdf at 5.

[10] *Id.*

between the Western District of Texas, El Paso Division and the Northern District of Texas, Lubbock Division. Even further, while there are two district court judges, two active senior judges, and four magistrate judges in the El Paso Division,[11] the Lubbock Division only has one district judge, one senior judge, and one magistrate judge.[12] In other words, because the Lubbock Division has less than half the judges in the El Paso Division, there is no guarantee this case would move more quickly if transferred to Lubbock. This factor thus weighs against transfer.

**(b) <u>El Paso Has a Unique and Strong Localized Interest.</u>**

The second public interest factor, localized interests, weighs against transfer because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Western District, and El Paso residents have a uniquely compelling interest in having the case decided locally. The Fifth Circuit recently clarified the localized-interests factor: when identifying whether local interests are present, "[w]e look not to the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and *the events* that gave rise to a suit." *TikTok*, 85 F.4th at 364 (emphasis added) (citation modified). '"Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case."' *Chamber of Com.*, 105 F.4th at 308 (citation omitted). Simplified, "localized interests are present when the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *Id.* (citation modified). However, not all cases are "localized," especially when citizens in one city have no greater reason to hear the case than others. *See id.*

Here, El Pasoans have a uniquely strong, local interest in hearing this case because the

[11] *Judges' Directory & Biographies*, U.S. Dist. Ct. for the W. Dist. of Tex., https://www.txwd.uscourts.gov/judges-information/judges-directory-biographies/ (last visited July 7, 2026).

[12] *Lubbock*, U.S. Dist. Ct. for the N. Dist. of Tex., https://www.txnd.uscourts.gov/location/lubbock (last visited July 7, 2026).

most disconcerting harms from the Creighton Memoranda's censorship are on full display at TTUHSC El Paso. Indeed, TTUHSC El Paso annually provides medical training to over 1,000 students in El Paso and has the "only four-year medical school on the U.S./Mexico border." *Id.* ¶ 140, 143. Given its geographic context, TTUHSC El Paso has a specialized curriculum, unlike its peer institution in the Northern District, focused on "community, family, culture, environmental and occupational health, and Spanish."[13] The TTUHSC El Paso curriculum also requires professors to tailor instruction so that students will "learn about the Border community and culture through field experiences and exercises.[14]"

The Creighton Memoranda and its vague prohibition on "prejudiced advocacy" creates harms that are disproportionately borne by Plaintiffs' members at TTUHSC El Paso. Illustrative of this point, Plaintiffs' members at TTUHSC El Paso have received instruction that they cannot use the word "disparity" when training future medical professionals. *See id.* ¶ 173. This censorship is uniquely harmful because Plaintiffs' members at TTUHSC El Paso are *specifically charged* with training future medical professionals to treat border communities where racial disparities are ubiquitous and therefore a critical reality to be discussed. For example, Hispanic children living in border communities in Texas face a 64 percent higher asthma rate compared to those living off the border. *Id.* ¶ 173. Cervical cancer mortality rates among Hispanic women along the Texas-Mexico border are higher than for non-Hispanic white women living in non-border counties in Texas. *Id.* ¶ 173. And in West Texas, Black and Hispanic women have a higher age-adjusted breast cancer mortality rate than Texas as a whole. *Id.* ¶ 174. Additionally, Hispanic people living on the border

---

[13] *PSCI 6211 - Society Comm Individual III*, Texas Tech Health El Paso, https://catalog.ttuhscep.edu/preview_course_nopop.php?catoid=7&coid=2609&print.

[14] *Id.*

are more likely to develop antibiotic resistance than white Americans.[15] Faculty at TTUHSC El Paso need to train future medical professionals about these disparities in order to treat patients effectively. Prior to the Creighton Memoranda, there were no impediments to passing on knowledge of these disparities. However, the Creighton Memoranda bar Plaintiffs' members at TTUHSC El Paso from teaching their students about such disparities. The result is censored academic professionals, ill-informed medical students, and contravention of the mission of TTUHSC El Paso to effectively serve Hispanic and Black populations. Indeed, due to Fort Bliss, the second largest military base in the country, there is a large population of Black El Pasoans and Black veterans impacted by the medical care provided at TTUHSC El Paso. Dwyer Decl. ¶ 18.

There are also non-party witnesses in El Paso, such as professors and medical students who are members of the El Paso chapter of the NAACP, who can provide evidence of how the Creighton Memoranda impact their ability to teach and learn about medically accurate concepts relating to race, gender identity, and sexual orientation. Dwyer Decl. ¶¶ 18, 19. Potential testimony by these witnesses at trial is especially probative as it will outline the most injurious effects of the Creighton Memoranda on the health and safety of El Paso residents.

While the Creighton Memoranda have undoubtedly encroached on the First Amendment rights of Plaintiffs' members in Lubbock, San Angelo, and across the Texas Tech system generally, the Creighton Memoranda's actual impacts at TTUHSC El Paso are particularly dangerous. Censoring medical curriculum about the border community's documented medical disparities, at an institution *specifically entrusted with the duty of centering this community's care*, endangers the lives of Hispanic patients in El Paso and the broader border community at large. Prior to the

[15] Maya Nadimpalli, Courtney Chan & Shira Doron. *Antibiotic resistance: a call to action to prevent the next epidemic of inequality*. National Library of Medicine, Feb. 27, 2021, https://pmc.ncbi.nlm.nih.gov/articles/PMC7961885/

opening of the TTUHSC El Paso, "El Paso County's average number of physicians per 100,000 people was 75% less than the national average. Ten years later, that shortage has been reduced to 60% after the medical school's opening," *id*. ¶ 141, due to the proliferation of student doctors. Under the Creighton Memoranda, however, the next generation of these very student doctors will now enter the workforce ill-informed, ill-advised, and ill-equipped to serve their future patients.

The citizens of El Paso have a strong and unique local interest in this litigation: censoring professors and medical students at TTUHSC El Paso from discussing and learning about health disparities based on fact-based research and documented outcomes directly affects the community's access to quality healthcare. Thus, the localized public interest factor heavily weighs against transfer out of the Western District.

## IV. CONCLUSION

Plaintiffs have properly demonstrated that venue is proper in the Western District, and Defendants have failed to meet their burden to demonstrate that the private and public interest factors collectively weigh in their favor to justify transfer. Accordingly, this Court should deny Defendants' motion to dismiss for improper venue and their motion to transfer.

*[signatures on following pages]*

DATED this 19th day of August 2026.

Respectfully submitted,

*s/Antonio L. Ingram II*

Antonio L. Ingram II
Avatara A. Smith-Carrington (*admitted pro hac vice*)
Maydrian Strozier-Lowe (*admitted pro hac vice*)
Alyssa K. Gordon (*admitted pro hac vice*)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, D.C. 20005
aingram@naacpldf.org
acarrington@naacpldf.org
mstrozier-lowe@naacpldf.org
agordon@naacpldf.org
(202) 682-1300
FAX: (202) 682-1312

Christina Das (*admitted pro hac vice*)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, N.Y. 10006
cdas@naacpldf.org
(212) 965-2200
FAX: (212) 226-7592

Nicholas Hite (*admitted pro hac vice*)
Elizabeth Dankers (*admitted pro hac vice*)
Nephetari Smith (*admitted pro hac vice*)
Kenneth D. Upton, Jr. (SBN 00797972)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
nhite@lambdalegal.org
ldankers@lambdalegal.org
nsmith@lambdalegal.org
kupton@lambdalegal.org
Phone: (214) 219-8585
FAX: (855) 535-2236

Katherine M. Bolger (*admitted pro hac vice*)
Rachel A. Strom (*admitted pro hac vice*)
Leena Charlton (*admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Fl.
New York, New York 10020
katebolger@dwt.com
rachelstrom@dwt.com
leenacharlton@dwt.com
Tel.: (212) 489-8230